IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE LUTZ CARDIELLO,<br>          Appellant,<br><br>v<br><br>THOMAS D. ARBOGAST and MARY CLAIRE ARBOGAST,<br>          Appellees. | 2:12-cv-353 |
| THOMAS D. ARBOGAST and MARY CLAIRE ARBOGAST,<br>          Appellants,<br><br>v<br><br>NATALIE LUTZ CARDIELLO and TRZ HOLDINGS, II,<br>          Appellees. | 2:12-cv-401<br>2:12-cv-402 |

**MEMORANDUM OPINION AND ORDER OF COURT**

Now pending before the Court are three[1] related appeals from a Memorandum Opinion and Order issued by United States Bankruptcy Judge Bernard Markovitz on February 7, 2012. The genesis of the underlying dispute was the dissolution of the law firm of Titus and McConomy ("T&M"), and the resulting breach of its commercial lease over a dozen years ago. The debtor in this bankruptcy case, Thomas Arbogast, was a partner at T&M and is subject to a

---

[1] A fourth related appeal, Civil Action No. 12-400, has been dismissed by stipulation of the parties. TRZ Holdings, II, which was the Plaintiff/Appellant in Civil Action No. 12-400, is not a party to the remaining cases, although it is identified in the captions.

1

judgment in favor of the lessee ("Trizec"). In an attempt to enforce its judgment, Trizec filed a fraudulent transfer action against Arbogast and his wife Mary Clair Arbogast ("Mrs. Arbogast") (collectively "the Arbogasts") on April 23, 2007 in the Court of Common Pleas of Allegheny County, Pennsylvania (the "Fraudulent Transfer Action"). Arbogast filed a Chapter 7 petition in January 2010; the Fraudulent Transfer Action was removed to the Bankruptcy Court; and the Bankruptcy Trustee was substituted for Trizec as the Plaintiff. After lengthy proceedings, Judge Markovitz ultimately entered judgment in favor of the Trustee and against the Arbogasts in the amount of $143,389.10. Both sides have filed appeals.

Factual and Procedural Background

The procedural history of this matter is complicated but the parties agree that the underlying facts are not in dispute. Arbogast was a partner at T&M. When that firm dissolved, Arbogast began working at the law firm of Schnader Harrison Segal & Lewis, LLP ("Schnader"). His compensation from Schnader was directly deposited into a checking account that Arbogast held jointly with his wife as tenants by the entireties.

After prolonged litigation in the Court of Common Pleas of Allegheny County, Pennsylvania, Trizec obtained a $2.7 million judgment against Arbogast and other former partners of the T&M law firm. In April 2007, Trizec filed the Fraudulent Transfer Action against the Arbogasts in an effort to enforce the judgment. The gravamen of the Fraudulent Transfer Action was that each direct deposit of Arbogast's salary income into the joint checking account constituted an actual or constructive fraudulent transfer pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S.A. § 5101 et seq. Trizec's judgment

against Arbogast was subsequently reversed by the Superior Court of Pennsylvania. In response, Trizec voluntarily discontinued the Fraudulent Transfer Action without prejudice.

In 2009, the Pennsylvania Supreme Court reversed the Superior Court and reinstated Trizec's judgment against Arbogast. On January 15, 2010, Arbogast filed a voluntary petition for Chapter 7 relief in bankruptcy. On February 3, 2010 – in violation of the automatic stay in bankruptcy – Trizec obtained an order from the Court of Common Pleas of Allegheny County to re-activate the Fraudulent Transfer Action.[2] On February 23, 2010 Arbogast removed the Fraudulent Transfer Action, and it became an Adversary Proceeding in the Bankruptcy Court. The Trustee was substituted as a party-plaintiff in June 2010 and the case was assigned to former Bankruptcy Judge M. Bruce McCullough (since deceased).

There was considerable wrangling over the burden of proof and scope of the evidence, including a motion for sanctions. In a pretrial ruling, Judge McCullough precluded the Trustee from introducing evidence of each payment <u>into</u> the joint checking account. Instead, he ordered the Trustee to identify the transfers <u>out of</u> the joint checking account which were alleged to be improper. Eventually, the Trustee identified five such groups of disbursements which totaled approximately $900,000. Presently at issue are two of these groups of disbursements – sums applied in payment for memberships in three different country clubs, and disbursements relating to a second home in Florida. A two-day hearing was held in October 2010 before Judge McCullough. Unfortunately, Judge McCullough died before a decision was rendered.

The case was re-assigned to Judge Markovitz, who determined that a retrial was necessary. It is apparent that the parties disagree as to the scope of the retrial and/or the continued effect of "stipulations" or understandings the parties had reached with respect to the

---

[2] Even though Trizec had, technically, violated the bankruptcy stay by obtaining an order to reinstitute its Fraudulent Transfer Action in the state court, Judge Markovitz concluded that the Trustee would have been able to obtain that relief in any event. That decision has not been appealed.

original trial conducted by Judge McCullough. Judge Markovitz conducted an evidentiary hearing in April 2011. On February 7, 2012, he issued a 74-page Memorandum Opinion and Order of Court.

Legal Analysis

There are five issues raised in the consolidated appeals. In Civil Action No. 12-353, the Trustee appeals two discrete legal issues: (1) the length of the "look-back period"; and (2) who bore the burden of proof as to whether the funds were used to purchase necessities. Separate, but identical, appeals were filed by the Arbogasts at Civil Action Nos. 12-401 and 12-402 because Judge Markovitz's Order resolved both the Fraudulent Transfer Action and objections to exemptions claimed in the underlying bankruptcy proceeding. The Arbogasts appeal three aspects of Judge Markovitz's decision: (1) the test for determining what expenditures constitute fraudulent transfers; (2) whether the expenditures on country club memberships were properly determined; and (3) whether the expenditures on a Florida second-home were properly determined. The Court will address these issues seriatim.

1. Look-Back Period

The Trustee argues on appeal that because the state court complaint alleged a continuing violation and sought injunctive relief into the future, the Trustee is able to recover all fraudulent transfers made from April 2003 through trial (i.e., a seven-year period). The Arbogasts contend that Judge Markovitz applied the correct look-back period and that the Trustee limited her claim at trial.

The Court agrees with the Arbogasts on the ground that the Trustee limited her claim to the 2003-2007 time period. The original state court complaint in the Fraudulent Transfer Action did allege a continuing violation and did seek to enjoin further transfers of funds by Arbogast. However, at the outset of the trial before Judge McCullough on October 14, 2010, there was a specific discussion of the time period covered by the Trustee's claims in this case. Judge McCullough asked whether anyone disputed that a four-year period was at issue. Counsel for the Trustee agreed. Judge McCullough then confirmed: "So, we're dealing with four years back from the date of the filing of the complaint? Is that right?" Counsel for the Trustee responded: "Correct, your Honor. And that would be four years back from the date of the filing would be April 23rd of 2003, which is why you see that date on some of Mr. Venetia's exhibits." Thus, the Trustee clearly limited its claims to the 2003-2007 time period – she did not seek damages beyond 2007, as she now maintains. The Court and opposing party proceeded based on that representation and premise.

There is no evidence that the Trustee expanded the scope of its claim during the retrial. Before Judge Markovitz, the Trustee continued to advocate a look-back period from April 2003-April 2007, while the Arbogasts objected and advocated a look-back period from January 2006-January 2010.$^{3}$ Judge Markovitz observed that the period proposed by the Trustee was actually more favorable to the Arbogasts and deemed the dispute "largely academic." Opinion at 16-17, 20. He implemented the 2003-2007 look-back period. In sum, Judge Markovitz believed that the parties advocated two separate time periods and that he had resolved the dispute in the Trustee's favor.

---

$^{3}$ The Arbogasts' argument was based on the timing of the state-court discontinuance; the bankruptcy filing; and the reinstatement of the Fraudulent Transfer Action.

The Trustee has failed to specify or designate any portion of the transcript or hearing record at which she objected to this ruling. Nor has the Trustee shown that she clearly communicated her intention to seek damages over the entire seven-year period. That one of the Trustee's trial exhibits itemized damages from the 2007-2010 timeframe cannot overcome the clear representation of counsel to the Court that the Trustee's claim was limited to the four-year period of 2003-2007. The ruling of the Bankruptcy Court on this issue will be affirmed.

2. Burden of Proof

The Trustee contends that the use of funds to purchase necessities constitutes an affirmative defense, on which the Arbogasts should bear the burden of proof. The Arbogasts contend that Judge Markovitz correctly placed that burden on the Trustee. In addition, they contend that this issue is a "red herring" which is rendered moot by the actual findings of Judge Markovitz.

Judge Markovitz placed the ultimate burden of persuasion of proving a constructive fraudulent transfer on the Trustee. He relied on Comment 6 to 12 Pa.C.S.A. § 5102, and rejected the contrary conclusion reached in the case of *In re Meinen*, 232 B.R. 827, 843 (W.D. Pa. Bankr. 1999). Judge Markovitz adhered to *In re Meinen* in all other material respects, and reached his decision as to the burden of proof "reluctantly." Opinion at 32. On the other hand, Judge Markovitz placed the burden to produce evidence regarding the use of funds from the entireties account upon the Arbogasts.

The Court concludes that Judge Markovitz properly allocated the burden of persuasion to the Trustee. Even though the question of whether deposits into a joint checking account may be protected from creditors because they were spent on "necessities" bears many of the

characteristics of an affirmative defense, under Pennsylvania law the burden of proof remains with the Trustee throughout. Comment 6 to § 5102 specifically rejected the burden shifting approach in constructive fraud claims which is now being advocated by the Trustee. The drafters of PUFTA described such burden-shifting as an "archaism" which "in any event should not be followed in applying this chapter." *See, e.g., Fidelity Bond & Mortgage Co. v. Brand*, 371 B.R. 708, 717-18 (E.D. Pa. 2007). Judge Markovitz correctly determined that the burden to prove that the relevant deposits into the joint checking account were not spent on necessary household expenses remained part of Plaintiff's prima facie case. The ruling of the Bankruptcy Court on this issue will be affirmed.

    3.  Luxuries v. Necessities

The parties dispute the underlying test to determine which use of funds constitutes a fraudulent transfer. The Arbogasts contend that only purchases of "luxury items" constitute fraudulent transfers, citing the opinion(s) of the Allegheny County Court of Common Pleas in a parallel case (the "Titus Decisions") [4]; the text of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(C); and the interlocutory ruling of Judge McCullough. The Trustee contends that Judge Markovitz applied the correct legal test.

The Court agrees with the Trustee. As an initial matter, Judge Markovitz correctly determined that he was not bound by the Titus Decisions or Judge McCullough's initial interlocutory rulings and that decision has not been appealed. Turning to the substantive dispute, Judge Markovitz concluded that funds directly deposited into a joint checking account may constitute fraudulent transfers (or at least constructive fraudulent transfers) "unless they were spent on necessities." The Judge explained that this holding is consistent with *In re*

---

[4] The Titus Decisions appear to be unpublished and were not provided to the Court as part of the record.

*Meinen*, which he found to be "far more persuasive" than the contrary holding of the state court in the Titus Decisions. Judge Markovitz, citing *In re Alexo*, 436 B.R. 44, 49 (N.D. Ohio Bankr. 2010), explained that the Titus Decisions created a false dichotomy by assuming that anything that is not a "luxury" must be a "necessity." Judge Markovitz opined that "many items can fall between the two categories." In addition, he illustrated the potential unfairness of considering the pre-existing life-style of a debtor (by criticizing a case which held that "a mink coat constituted a necessary!"). Opinion at 37 (emphasis in original).

It is important to recognize that the cause of action at issue is the PUFTA claim originally filed by Trizec. Thus, the question of what uses of money from the entireties checking account constitute fraudulent transfers is governed by Pennsylvania law rather than the bankruptcy code. In *Watters v. DeMilio*, 16 Pa. D&C.2d 747 (Ct. Common Pleas Carbon Cty., 1957), the Court stated: "The general rule of law is that conveyances without a fair consideration made by an insolvent debtor in diminution of his assets must be held to be fraudulent under law and against the creditors of the insolvent." However, the *Watters* Court recognized an exception based on *Welker v. Strohmeyer*, 45 Berks 21, "that an insolvent's expenses for the maintenance of his family, if shown to be reasonable and necessary, may be a legitimate employment of his money in hand, and will not in such case be considered a conveyance fraudulent in law as to his creditors." *Id*. at 752.

*In re Meinen* confronted the same issue as this case. After a review of Pennsylvania law, Judge McCullough determined that *Watters* and *Welker* were still good law. Accordingly, the Court held that "an insolvent debtor's deposits of his or her own funds into an entireties account are not fraudulent as to said debtor's creditors to the extent that said funds are then used to satisfy reasonable and necessary expenses for the maintenance of said debtor's family." 232 B.R. at

842. Judge McCullough explained that this test is consistent with the PUFTA, 12 Pa.C.S.A. § 5103(a), because the payment of necessary household expenses can be viewed as a receipt of reasonably equivalent value in that the funds are used to satisfy an antecedent debt. *Id*. *Accord In re Dawley,* 2005 WL 2077074 (E.D. Pa. Bankr. Aug 10, 2005).

Judge Markovitz explained that he would follow the *In re Meinen* test, although he rephrased it slightly. He held that "direct deposits of the Debtor's individual compensation into the Entireties Checking Account may constitute fraudulent transfers, at least constructive fraudulent transfers, unless they were spent on necessities." Because Judge Markovitz explicitly stated that he was adopting the *In re Meinen* test, the Court is not persuaded by the Arbogasts' effort to create a distinction between the phrases "reasonable and necessary expenses" and "necessities." Indeed, Judge Markovitz stated that the phrases were intended to be synonymous. Opinion at 34. Judge Markovitz applied the correct standard under Pennsylvania law. Accordingly, the ruling of the Bankruptcy Court on this issue will be affirmed.

4. Country Club Memberships

The Arbogasts contend that Judge Markovitz erred by ruling that the expenditures for country club memberships could be recovered by the Trustee. They contend that such expenditures did not constitute fraudulent transfers because they were made solely by Thomas Arbogast for his own business and personal benefit, and did not benefit Mrs. Arbogast. In the alternative, the Arbogasts contend that a trial stipulation approved by Judge McCullough must be enforced such that the case would be remanded to determine the actual recoverable amount.

The Trustee contends that Judge Markovitz ruled correctly. In particular, the Trustee contends that the Arbogasts mischaracterize the issue by focusing on whether the golf

memberships benefited Mr. and Mrs. Arbogast jointly. Instead, the Trustee reasons that the initial transfers into the joint checking account constituted (constructive) fraudulent transfers, which are recoverable because the expenditures on club memberships did not qualify as "necessary household expenses." The Trustee also contends that at the retrial with Judge Markovitz there was no "stipulation" to reserve ruling on damages. The Trustee contends that the initial "stipulation" was designed to avoid the necessity of an evidentiary review by Judge McCullough and that another hearing is not necessary because Judge Markovitz actually reviewed the evidence and decided the amount of damages.

For the reasons set forth above, the Court concludes that Judge Markovitz applied the correct test to determine what expenditures constituted fraudulent transfers. The general rule under Pennsylvania law is that "conveyances without a fair consideration made by an insolvent debtor in diminution of his assets must be held to be fraudulent under law and against the creditors of the insolvent." The use of funds from a joint checking account for necessary household expenses is an exception to this general rule. Country club memberships do not fall within the exception.

Turning to the alternative argument of the Arbogasts, the Court concludes that there is no need to remand for further factual findings. The alleged stipulation prior to the proceeding in October 2010 before Judge McCullough provided that if the Court found that exemptions were not proper and/or that some transfers were fraudulent, then counsel would confer on the dollar amount(s) and absent agreement, the amount(s) would be determined in a supplemental hearing. This "stipulation" must be viewed in light of the pretrial discussions of the parties with Judge Markovitz in April 2011 and the detailed findings of fact which he personally made.

10

At the start of the retrial in April 2011, Judge Markovitz elicited the parties' positions as to the issues in dispute and explained that his objective was to avoid having the case tried a third time by "Judge X." Tr. at 13. Although the parties referenced earlier stipulations – particularly as to the admissibility of exhibits – neither party requested a subsequent hearing on damages. Judge Markovitz also put the parties on notice that they were "here now to try the case . . . so you do what you need to do." Tr. at 22.

The Arbogasts contend that they were deprived of the opportunity to present evidence as to the funds contributed to the joint checking account by Mrs. Arbogast. However, it appears that the parties did develop an evidentiary record on this issue (*see* the Exhibits and Transcripts cited at the Arbogasts Reply Brief at 3; Opinion at 46-47). Indeed, Judge Markovitz specifically excluded one payment to Marsh Landing Country Club on the ground that the Arbogasts had proven that "such disbursement came not from the Entireties Checking Account but rather from Mrs. Arbogast's Sole Account." Opinion at 56. Thus, it appears that Judge Markovitz did consider whether disbursements were made with funds contributed by Mrs. Arbogast.

In any event, the Arbogasts have not demonstrated that they communicated their intent to reserve damages for a retrial. Indeed, they "freely admit that the Trial Stipulation was not elaborately addressed in the subsequent hearing before Judge Markovitz." It is readily apparent that Judge Markovitz was not aware of any such "stipulation" because he actually analyzed the evidentiary record and made specific factual findings. *See* Opinion at 53-57. In sum, there is no basis to remand this matter for further findings of fact. Accordingly, the decision of the Bankruptcy Court will be affirmed on this issue.

     5.  Florida Home

The Arbogasts' arguments regarding expenditures on the Florida home parallel their positions as to the country club memberships. They contend that Judge Markovitz failed to apply a stipulation entered into for the October 2010 trial before Judge McCullough. In particular, the Arbogasts contend that many of the expenditures came from sources other than the joint checking account and seek a remand to the Bankruptcy Court for additional findings of fact.

The Trustee contends that a remand is unwarranted, because Judge Markovitz made thorough, careful findings as to the amount of the fraudulent transfers. The Trustee also contends that the Arbogasts failed to preserve any stipulation to reserve findings on damages pending a second hearing and that remand for such a hearing is unnecessary.

These arguments parallel the contentions made by the parties with respect to the country club memberships, and therefore, the Court reaches the same conclusions. Judge Markovitz applied the correct substantive legal standard; at the April 2011 retrial, no "stipulation" to reserve damages issues was communicated to Judge Markovitz; and there is no need to remand for further proceedings because Judge Markovitz analyzed the well-developed evidentiary record and made detailed findings of fact. Accordingly, the decision of the Bankruptcy Court will be affirmed on this issue.

<u>Conclusion</u>

This is a complex case, which was rendered more difficult by the unexpected death of Judge McCullough and subsequent reassignment to Judge Markovitz. It appears that the parties did not clearly communicate to Judge Markovitz their expectations as to the scope of the retrial and the applicability of understandings that had been reached prior to the reassignment. The

Trustee did not clearly express her intent to seek a seven-year "look-back period," and the Arbogasts did not express their expectation that damages would be reserved for a subsequent hearing.  Judge Markovitz proceeded to consider the entire evidentiary record developed by the parties and rendered a thorough and legally-supported decision.  Upon consideration of the extensive memoranda of law submitted by the parties, the Court concludes that the opinion and order of Bankruptcy Judge Markovitz will be affirmed in all respects.

     An appropriate Order follows.

                                         McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATALIE LUTZ CARDIELLO,<br>    Appellant,<br><br>    v<br>THOMAS D. ARBOGAST and MARY CLAIRE ARBOGAST,<br>    Appellees. | )<br>)<br>)<br>) 2:12-cv-353<br>)<br>)<br>)<br>) |

-----------------------------------------------------------

| | |
|---|---|
| THOMAS D. ARBOGAST and MARY CLAIRE ARBOGAST,<br>    Appellant,<br><br>    v<br>NATALIE LUTZ CARDIELLO and TRZ HOLDINGS, II,<br>    Appellees. | )<br>)<br>) 2:12-cv-401<br>) 2:12-cv-402<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 14th day of September, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that the Notice of Appeal in Civil Action No. 12-353 is **DENIED**; the Notices of Appeal in Civil Action Nos. 12-401 and 12-402 are **DENIED**; and the Memorandum Opinion and Order of Bankruptcy Court dated February 7, 2012 is **AFFIRMED**.  The clerk shall docket these cases closed.

                       BY THE COURT:

                       s/Terrence F. McVerry
                       United States District Judge

cc: **Neal H. Levin, Esquire**
Email: nhlevin@freebornpeters.com

**Nicholas D. Krawec, Esquire**
Email: nkrawec@bernsteinlaw.com

**Joseph F. McDonough, Esquire**
Email: jmcdonough@mmlpc.com